UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MEDICAL BENEFITS ADMINISTRATORS OF MD, INC., a Maryland corporation; and CUSTOM RAIL EMPLOYER WELFARE TRUST FUND,

    Plaintiffs,

  v.

SIERRA RAILROAD COMPANY, n/k/a SIERRA NORTHERN RAILWAY; VANNA M. WALKER; AMBER A. GILLES and DAVID N. MAGAW,

    Defendants.

NO. CIV. S-06-2408 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendants Sierra Railroad Company, n/k/a Sierra Northern Railway ("Sierra"), David N. Magaw ("Mcgaw"), and Amber A. Gilles' ("Gilles") (collectively, "defendants") motions to dismiss plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be

///

///

granted.[1]  Defendants contend that plaintiffs' state law claims are barred by ERISA sections 502(a) and 514(a), and that plaintiffs fail to state a claim under ERISA section 502(a)(3) for restitution.  Plaintiffs oppose defendants' motions to dismiss.

For the reasons discussed below, defendants' motions to dismiss are GRANTED as to plaintiffs' state law claims, but DENIED as to plaintiffs' ERISA section 502(a)(3) claim.[2]

## BACKGROUND[3]

Plaintiff Custom Rail Employer Welfare Trust Fund ("CREW") is a multiple employer welfare arrangement for certain railroad employers which has established an Employee Welfare Benefit Plan (the "Plan") within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. section 1001 *et. seq.* ("ERISA").  CREW provides health benefits to qualified and properly enrolled active employees of participants and is a fiduciary as defined by ERISA.  (First Amended Complaint ("Am. Comp.") at ¶ 16.)  The Plan is administered by plaintiff Medical Benefits Administrators ("MBA").  (Id. at ¶ 15.)

///

---

[1] Defendant Gilles filed a separate motion to dismiss that is nearly identical to the motion filed by Sierra and Magaw. The court jointly considers the motions herein.  Defendant Vanna M. Walker ("Walker") has not appeared in this action and is not a moving party on the motions.

[2] Because the court finds that oral argument will not be of material assistance, it submits these matters on the papers. E.D. Cal. L.R. 78-230(h).

[3] The following facts are derived from plaintiffs' first amended complaint filed May 24, 2007.

2

1        Sierra is a short line railroad company in California that
2   qualifies to participate in CREW through membership in the Small
3   Railroad Business Owners Association of America.  (Id. at ¶ 17.)
4   Sierra submitted an application for group insurance coverage
5   through CREW in approximately December 2003.  (Id. at ¶ 29.)
6   Sierra and CREW reached an agreement, and Sierra's participation
7   in the Plan became effective on January 1, 2004.  (Id.)  Under
8   the agreement, an eligible employee is one who works normally at
9   least 24 hours per week and is on the regular payroll of the
10  employer for that work or is under a contract or a full-time
11  written appointment with a member employer.  (Id. at Ex. A.)
12       During the relevant time period, Gilles was the Manager of
13  Accounting and Human Resources, Magaw was the Vice President, and
14  Walker was represented to be the Safety Manager for Sierra.  (Id.
15  at ¶ 18.)  On July 17, 2003, Sierra submitted a Group Benefit
16  Plan Questionnaire (the "Questionnaire") to MBA for participation
17  in CREW.  Magaw signed the Questionnaire and attached a list of
18  Sierra's fifty employees, thirty-five of which were to be
19  enrolled in CREW.  (Id. at ¶ 23.)
20       In response to the Questionnaire, CREW began discussions
21  with Sierra, and Sierra was required to submit supplemental lists
22  of employees who were eligible for the Plan.  From July through
23  December 2003, Gilles submitted lists of employees to CREW for
24  consideration and rating of the Plan.  (Id. at ¶ 24-26.)  Gilles
25  also submitted information to CREW regarding which employees were
26  covered under Sierra's existing employee benefit plan with Kaiser
27  Permanente, which did not include Walker as of January 1, 2004.
28  (Id. at ¶ 28.)

3

1    On December 10, 2003, Magaw signed the Participation
2 Application and Agreement (the "Agreement") between Sierra and
3 CREW, and Gilles faxed it to CREW. (Id. at ¶ 29.) The Agreement
4 certified that Sierra read and understood that CREW would rely on
5 the information set forth by Sierra as a basis for approval.
6 (Id. at ¶ 30.) On January 1, 2004, the Plan between CREW and
7 Sierra became effective. (Id. at ¶ 29.) On January 7, 2004,
8 Gilles submitted an Employee Enrollment Form ("Employee Form"),
9 signed by Walker, seeking to add Walker as an enrollee in CREW
10 and verifying that all the information contained therein was
11 correct. (Id. at ¶ 32.) The Employee Form, plaintiffs allege,
12 misrepresented that Walker was employed full-time by Sierra as a
13 Safety Manager since December 19, 2002. (Id. at ¶ 34.) After
14 Walker enrolled in CREW, she, along with healthcare providers,
15 began submitting claims for medical benefits stemming from her
16 treatment of Multiple Myeloma, with which she had been diagnosed
17 prior to January 7, 2004. (Id. at ¶¶ 35-36.) Neither Walker nor
18 Gilles disclosed Walker's illness prior to her enrollment in
19 CREW. (Id. at ¶ 37.)

     On September 8, 2004, Ronald J. Wilson, the CEO of MBA,
21 asked Gilles and Magaw during a telephone call whether Walker was
22 an employee of Sierra. Magaw responded that Walker was a
23 "contract employee" of Sierra and that Sierra had an agreement to
24 cover her because she was Sierra's Safety Director. (Id. at ¶
25 38.) Plaintiffs allege that Walker did not meet the criteria as
26 defined in the Summary Plan Description in order to enable her to
27 receive coverage. (Id. at ¶ 39.) In reliance on
28 misrepresentations by Sierra, MBA made payments from CREW to

4

healthcare providers on behalf of Walker in the amount of $177,740.35.  (Id. at ¶ 42.)

## STANDARD

On a motion to dismiss, the allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).  Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed.  Id.  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent

5

with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

Plaintiffs argue that defendants' alleged misrepresentations regarding Walker's employment status and eligibility for coverage under the Plan give rise to several claims.  First, plaintiffs claim that they are entitled to restitution against Sierra and Walker under ERISA section 502(a)(3).[4]  Plaintiffs also seek relief under state law, asserting the following claims: (1) breach of fiduciary duty against Sierra; (2) fraud against Sierra, Walker, Gilles, and Magaw; (3) contractual fraud against Sierra; and (4) negligent misrepresentation against Sierra, Walker, Gilles, and Magaw.  In response, defendants assert that plaintiffs' state law claims are preempted by ERISA.  Defendants further allege that plaintiffs' claim for relief under ERISA does not seek restitution; rather, defendants argue that plaintiffs are seeking monetary damages which are not recoverable as "equitable relief" under ERISA section 502(a)(3) and therefore

///

---

[4] ERISA section 502(a)(3) is codified at 29 U.S.C. section 1132(a).

6

plaintiffs' ERISA claim fails to state a cause of action upon which relief can be granted.

### A. **Plaintiffs' State Law Tort Claims are Preempted by ERISA.**[5]

The Ninth Circuit has consistently recognized that "ERISA contains one of the broadest preemption clauses ever enacted by Congress." Security Life Ins. Co. of America v. Meyling, 146 F.3d 1184, 1188 (9th Cir. 1998) (quoting Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1988)). ERISA section 514(a) unequivocally preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Further, the scope of section 514(a) preemption encompasses common law causes of action that "relate to" ERISA plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987). Even though state laws "which regulate insurance, banking or securities" are not preempted under 29 U.S.C. section 1144(b)(2)(A), plaintiff CREW's claim that it is fully insured under a reinsurance agreement does not save it from preemption. See Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003) (recognizing that for laws to be deemed regulating insurance and therefore not preempted by ERISA, they must be "specifically directed toward" the insurance industry; "laws of general application that have some bearing on insurers do not qualify.")

///

---

[5] Because the court finds that plaintiffs' state law claims are preempted by ERISA section 514(a), it does not address whether the claims are alternatively preempted by section 502(a).

The United States Supreme Court has repeatedly held that the "relate to" standard of section 514(a) is a broad one. "The phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to a benefit plan' in the normal sense of the phrase, if it has a connection with or reference to such a plan." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)). A state law claim has a "connection with" a plan regulated by ERISA when the action has an impact on a relationship between traditional ERISA entities, such as between a participant and the plan or an employer. Abraham v. Norcal Waste Sys., Inc., 265 F.3d 811, 820-21 (9th Cir. 2001); Blue Cross of California v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045, 1052 (9th Cir. 1999). A state law claim has a "reference to" a plan regulated by ERISA when the claim depends on the existence of an ERISA plan, and the plan must exist in order for the claim to survive. California Div. Of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324-25 (1997), (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990)). If interpretation of an ERISA plan is required by a state law claim, that claim is preempted. See Metropolitan, 471 U.S. at 739.

Plaintiffs' allegations in the first amended complaint, and the exhibits attached thereto, demonstrate that plaintiffs' state law claims are interwoven with the Plan. For instance, plaintiffs allege "Walker, Gilles and Magaw knew that Walker was not an active employee of Sierra, as defined by the Summary Plan Description, and that Walker was not an eligible employee of

8

Sierra at the time that they submitted Walker's Employee Enrollment Form and as of the September 8, 2004 conversation with Ronald J. Wilson." (Am. Comp., at ¶ 40.) Further, plaintiffs assert, "In fact, Walker was not an active employee of Sierra, as defined by the Summary Plan Description." (Id. at ¶ 39; see also Id. at ¶¶ 20-51; 54-62; 65-71; 74-80; 83-88.) Thus, Walker's eligibility for Plan benefits is the gravamen of plaintiffs' state law claims, and the resolution of this action requires interpretation of the Plan.

Because plaintiffs' state law claims have a connection with and relate to the Plan, they are the sort of claims that ERISA section 514(a) was designed to address. See Metropolitan, 471 U.S. at 739 ("The pre-emption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements"). Plaintiffs' state law claims specifically have a connection with the Plan because they have an impact on the relationship between the Plan and the employer, precisely the traditional ERISA entities described in Abraham. 265 F.3d at 820-21; (Am. Comp., at ¶¶ 5-11; 15-18.) Further, plaintiffs' state law claims have a reference to an employee benefit plan because the claims are premised on the existence of an ERISA plan. See (Am. Comp., at ¶¶ 20-51; 54-62; 65-71; 74-80; 83-88); see also Providence Health Plan v. McDowell, 361 F.3d 1243 (9th Cir. 2004) ("In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of any ERISA plan, and whether the existence of the Plan is essential to the claim's survival").

Despite the express allegations in the first amended complaint, in their opposition to defendants' motions, plaintiffs raise additional facts, not alleged in their complaint, to argue their claims are not preempted. (Pls.' Opp'n. at 3, 6-7, 16-18.) Specifically, plaintiffs reference an internal "Adverse Benefit Determination" issued on November 5, 2005 and suggest that because Walker did not appeal this determination, her eligibility for enrollment in the Plan can no longer be disputed. (Id. at 6.) In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir, 844 F.2d at 649; Isuzu Motors Ltd., 12 F. Supp. 2d at 1042. Thus, facts not alleged in the complaint cannot be considered, and accordingly, the court properly disregards plaintiffs' arguments based on these new facts.

Nevertheless, even if the court allowed plaintiffs to further amend their complaint to include the additional facts, the court's finding of preemption would remain the same. The Adverse Benefit Determination, an internal administrative decision, is a fiduciary decision subject to review by the federal courts under ERISA section 502(a)(1)(b). 29 U.S.C. § 1132(a)(1)(B); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)(addressing the appropriate standard of review to be applied to section 501(a)(1)(B) actions stemming from benefits claim determinations). Therefore, plaintiffs' eligibility determination is subject to review by the federal courts, and such review would require interpretation of and reference to the Plan. The court would not, as plaintiffs suggest, simply rely on

plaintiffs' internal finding that Walker was ineligible to receive benefits. Contrary to plaintiffs' protestations, there is no legal basis to conclude that *plaintiffs'* determination as to Walker's eligibility is conclusive as to Sierra, Magaw or Gilles, let alone the court, which has the ultimate authority to determine the propriety of the benefits determination. Given the breadth of ERISA preemption generally, even if the court considered the Adverse Benefit Determination, plaintiffs' state law claims are preempted by ERISA section 514(a) because they relate to or reference the Plan as defined by ERISA.

In sum, each of plaintiffs' state law claims relate to the Plan and are therefore preempted. Plaintiffs' state law claims rest on the foundation that defendants misrepresented facts to plaintiffs or that Walker was ineligible to enroll in the Plan. Each claim requires interpretation of the Plan's eligibility requirements in order to resolve the issues at stake, regardless of any alleged misrepresentation. That is, if Walker met the eligibility requirements, plaintiffs would have no claim. Thus, each state law cause of action is preempted by ERISA section 514(a).

**B.   Plaintiffs Allege an Equitable Remedy, and therefore, their ERISA Claim Survives.**

Defendants assert that plaintiffs have failed to state a claim under ERISA section 502(a)(3) because they impermissibly seek money damages, not equitable restitution. In order to sustain a claim under section 502(a)(3), a plaintiff must plead that (1) it is an ERISA fiduciary; and (2) it is seeking equitable relief to redress violations or enforce provisions of

11

the plan. Reynolds Metals Co. v. Ellis, 202 F.3d 1246, 1247 (9th Cir. 2000); Carpenters Health and Welfare Trust for Southern CA v. Vonderharr, 384 F.3d 667, 672 (9th Cir. 2004).

Defendants primarily rely on two United States Supreme Court decisions to support their argument that plaintiffs do not seek an "equitable" remedy because their ERISA claim is in essence a disguised claim for money damages--a legal remedy not permitted by ERISA. In Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993) the court established that "equitable relief" under section 502(a)(3) includes only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." (emphasis in original). In Great-West Life & Ann. Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Court elaborated on Mertens' construction of 502(a)(3) and explained that one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien "on particular funds or property in the defendant's possession." Id. at 213. Defendants, in reliance on these cases, among others, assert that plaintiffs' section 502(a)(3) claim is impermissible because defendants are not in possession of the funds plaintiffs paid to Walker's healthcare providers. (Def.'s Mot. Dismiss at 16-17.)

Both Mertens and Great-West are distinguishable from the present case because neither involved an allegation of fraud or wrongdoing. In Mertens, a class of former employees who participated in a retirement plan brought suit against the plan's actuary for losses caused by allowing the employer to select the plan's actuarial assumptions, failing to disclose the plan's

funding shortfall, and failing to disclose that the employer was one of the actuary's clients.  508 U.S. at 250.  The Court held that "appropriate equitable relief" under section 502(a) does not include suits for money damages against a non-fiduciary who knowingly participated in a fiduciary's breach of fiduciary duty. Id. at 260-61.  Great-West involved a claim for specific performance of a reimbursement provision contained in an ERISA plan.  534 U.S. at 206.  The Court held that "appropriate equitable relief" under section 502(a) does not authorize a benefit plan to bring an action for specific performance of a reimbursement provision, nor does it compel a plan beneficiary who had recovered from a third-party tortfeasor to make restitution.  Id. at 210.  While Mertens and Great-West can accurately be viewed as limiting restitutionary remedies under section 502(a)(3), neither case is on point with regard to remedies under 502(a)(3) in a circumstance involving fraud or wrongdoing.  Because plaintiffs allege facts supporting fraud or wrongdoing and Sierra's receipt of "ill-gotten gains," (Am. Comp. at ¶¶ 34-42; 45; 51-52 )[6] this claim for relief is allowable under Ninth Circuit authority.

---

[6] (Am. Comp. at ¶ 34)("By submitting the Employee Enrollment Form, Walker and Gilles misrepresented to CREW that Walker was employed full-time by Sierra Railroad Company as a safety manager and that her date of hire was December 19, 2002."); (Id. at ¶ 45)("By misrepresenting that Walker was hired on December 19, 2002 as a safety manager and that Walker was a full-time Sierra employee, Sierra and Walker defrauded CREW into paying Walker's healthcare providers and Sierra was thereby able to retain the money that Sierra should have paid to Walker's healthcare providers."); (Id. at ¶ 51)("By defrauding CREW to make the payments to Walker's healthcare providers, Sierra and Walker now have possession of funds that Sierra and Walker should have paid to Walker's healthcare providers.")

13

Admittedly, defendants do not possess the actual funds that plaintiffs paid to Walker's healthcare providers, as those precise monies are in the hands of the healthcare providers; however, several Ninth Circuit cases have held that claims for restitution relating to "ill-gotten gains" of a defendant are permissible when a plaintiff alleges fraud or wrongdoing.  In <u>FMC Med. Plan v. Owens</u>, 122 F.3d 1258, 1261 (9th Cir. 1997) (citing <u>Mertens</u>, 508 U.S. at 260), the court noted, "[r]estitution is referred to in <u>Mertens</u> as the return of 'ill-gotten' assets or profits taken from a plan."  In <u>Carpenters Health and Welfare Trust for Southern California v. Vonderharr</u>, 384 F.3d 667, 672 (9th Cir. 2004), the court held that "<u>Owens</u> was based on <u>Mertens</u> and did not preclude all claims for relief, but appropriately limited restitution and constructive trust remedies to those situations in which fraud or wrongdoing is shown."  Further, in <u>Reynolds</u> where the appellant argued that <u>Owens</u> precludes all forms of monetary relief under section 502(a)(3), the court held, "This badly mischaracterizes the <u>Owens</u> opinion--the opinion accepts, as does <u>Mertens</u>, that restitution and constructive trust remedies may be appropriate under § 1132 (a)(3) [ERISA § 502(a)(3)], provided some fraud or wrongdoing is shown."  202 F.3d at 1249.

Indeed, in a case strikingly similar to this case, the Northern District court found that the plaintiff plan fiduciary had a viable restitution claim under ERISA section 502(a)(2).  <u>Northern California Food Employers & Retail Clerks Unions Benefit Fund v. Dianda's Italian-American Pastry Co., Inc.</u>, 645 F. Supp. 160 (N.D. Cal. 1986).  The court finds this case persuasive.  In

14

<u>Food Employers</u>, a benefit fund and administrator brought an action against an employer to recover amounts mistakenly paid to an ineligible employee based on the employer's willful and false reporting of hours worked. <u>Id.</u> at 161. The court held that section 502(a)(3) allows for the redress of plan violations of this sort and that such redress includes compensating the plan for lost monies due to the violation. <u>Id.</u> Therefore, the court held that the plaintiffs stated a claim under section 502(a)(3). The determinative factor in <u>Food Employers</u>, as well as this case, is that fraud or wrongdoing are alleged.[7]

Viewing the facts in the light most favorable to plaintiffs, the court finds that plaintiffs have properly stated a claim for restitution under ERISA section 502(a)(3).[8]

///
///
///
///
///

---

[7] For this reason, <u>Trustees ex rel. Teamsters Benefit Trust v. Doctors Medical Center of Modesto, Inc.</u>, 286 F. Supp. 2d 1234 (N.D. Cal. 2003), relied on by defendants, is distinguishable. In <u>Teamsters Benefit Trust</u>, a trustee of a union benefit trust brought suit against a health care provider over a contract dispute regarding the interpretation of the discount agreement between them. Unlike this case, there were no allegations of fraud, but the court in <u>Teamsters Benefit Trust</u> recognized, like <u>Food Employers</u>, that equitable restitution was permissible in instances of fraud or wrongdoing. <u>Id.</u> at 1239.

[8] Giving plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegation s of the complaint, the court assumes for the purposes of its analysis that, but for defendant Walker's enrollment in the Plan, Sierra was obligated to pay Walker's medical fees. However, nothing in this order precludes defendants from disputing this assumption at a later stage in the litigation.

15

**CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), are GRANTED as to plaintiffs' state law claims.  Defendants Magaw and Gilles are therefore dismissed as defendants, as only state law claims are asserted against them.  Defendants' motions are DENIED as to plaintiffs' claim under ERISA section 502(a)(3).

IT IS SO ORDERED.

DATED: October 5, 2007.

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE